UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| **IN RE APPLICATION OF THE NEW YORK TIMES CO. & REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL JUDICIAL RECORDS ANCILLARY TO GRAND JURY SUBPOENA OF MATTHEW COLE** | Misc. Action No. ________________ |

**BRIEF IN SUPPORT OF APPLICATION TO UNSEAL JUDICIAL RECORDS ANCILLARY TO GRAND JURY SUBPOENA OF MATTHEW COLE**

Applicants The New York Times Company ("The Times") and the Reporters Committee for Freedom of the Press ("Reporters Committee") (together, "Applicants") respectfully request that this Court unseal judicial records in the ongoing proceeding challenging a grand jury subpoena issued to freelance reporter Matthew Cole (the "Subpoena"). In particular, Applicants seek to unseal any motion to quash or contest the Subpoena by Mr. Cole, any associated briefing, any transcripts of hearings and judicial orders related to such motions, any motions and briefing on sealing such records or proceedings, and the associated docket sheet(s) (collectively, the "Subpoena Materials").

Sealing the entirety of this ancillary proceeding is no longer "necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury" under Fed. R. Crim. P. 6(e)(6). Mr. Cole has disclosed his receipt of the Subpoena and his challenge thereto. Given this court's supervisory capacity over ancillary grand jury proceedings, *In re Grand Jury Subpoena John Doe No. 05JG1318*, 584 F3d 175, 177 n.1 (4th Cir. 2009), and its commitment to providing public access to filings and proceeding in which there is no legal or practical need for secrecy, *see* L. Crim. R. 49; L. Civ. R. 5, unsealing the Subpoena Materials is warranted and appropriate.

Unsealing these materials is especially important given the unprecedented spate of grand jury subpoenas served by the government in recent months that seek to force journalists to identify confidential sources. The government's recent efforts have sparked significant public debate on the constitutional, statutory, and regulatory safeguards for reporters' source relationships. The public will benefit from understanding the parties' arguments and the Court's decisions in this matter, just as it did when briefing was opened in proceedings to quash grand jury subpoenas issued to other reporters for The Times, *see generally In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y., filed July 16, 2026), and in proceedings to quash grand jury subpoenas issued to a reporter for the Washington Post in this Court, *see generally In re Grand Jury Subpoena No. 25-3/2026R00115-0*, No. 1:26-dm-00001-WBP-1 (E.D. Va., filed Apr. 7, 2026).

Because there is no basis for this ancillary grand jury matter to remain under seal, and in light of the importance of the issues it raises, Applicants respectfully request that the Court unseal the Subpoena Materials.

**FACTUAL BACKGROUND**

In September 2025, The Times published an article co-authored by Dave Phillips, a national correspondent, and Matthew Cole, a freelance journalist. *See* Dave Philipps & Matthew Cole, *How a Top Secret SEAL Team 6 Mission Into North Korea Fell Apart*, The New York Times (Sept. 5, 2025), https://www.nytimes.com/2025/09/05/us/navy-seal-north-korea-trump-2019.html. Cole and Phillips reported that in 2019, a Navy SEAL mission to land on North Korean shores and plant an electronic listening device was compromised when the SEAL team encountered a North Korean boat containing a crew of civilians. *Id.* The article further revealed

that the SEAL team shot and killed the civilians, and that the Trump Administration failed to notify Congress before or after the operation. *Id.*

Mr. Cole is an investigative reporter and author who has worked at *NBC News*, *ABC News*, and *The Intercept*. *See About*, matthewcole.us/about (last accessed Aug. 7, 2026). He has written about SEAL Team 6 at length in his 2022 book, *Code Over Country*. *See id.* His latest book, which he describes as "the story of Jared Kushner's secret Middle East diplomacy," is due to be published this fall. *See* Matthew Cole, *Hey, It's Been A While*, The Cole Report (Aug. 1, 2026), https://matthewcole.substack.com/p/hey-its-been-a-while.

On August 1, 2026, The Times reported that Mr. Cole had been served with a grand jury subpoena in February 2026, initiated by prosecutors in Newport News, Virginia. Devlin Barrett, *Justice Dept. Subpoenas Times Freelancer in Effort to Identify Sources*, N.Y. Times (Aug. 1, 2026), https://www.nytimes.com/2026/08/01/us/politics/times-subpoena-reporter-trump-north-korea.html. The Times reported that the Subpoena was "seeking to force him to reveal his sources" for the September 2025 article by asking for "testimony about two years' worth of information about Mr. Cole's contacts and conversations." *Id.* Mr. Cole's lawyer stated in the same piece that Mr. Cole "will defend press freedom and the First Amendment from this administration's brazen attacks on journalists, and he will honor his commitment to his sources." *Id.*

The disclosure of the Subpoena to Mr. Cole garnered widespread coverage from other outlets. *See, e.g.*, Ernest Scheyder, *DOJ Subpoenas New York Times Freelancer over North Korea Story, Paper Says*, Reuters (Aug. 1, 2026), https://www.reuters.com/legal/government/us-justice-department-subpoenas-new-york-times-freelancer-over-north-korea-story-2026-08-01/; Marina Dunbar, *Freelance New York Times Reporter Subpoenaed Over Reporting on Failed US Mission*

*in North Korea*, The Guardian (Aug. 1, 2026), https://www.theguardian.com/media/2026/aug/01/subpoena-freelance-new-york-times-reporter.

On August 4, Mr. Cole posted to his Instagram account confirming that he "received a subpoena asking me to testify before a grand jury in what I believe is an effort to force disclosure of my sources" in connection with his reporting on the 2019 operation. Matthew Cole (@author_matthew_cole), Instagram (Aug. 4, 2026), www.instagram.com/p/DbgFWsFOaF4/. And on August 6, Mr. Cole posted an online article on his Substack publication, The Cole Report, titled "I've Been Subpoenaed By The Government," reiterating that he had received a subpoena in connection with his reporting, and noted that his lawyers had "filed a motion to unseal all the proceedings." Matthew Cole, *I've Been Subpoenaed By The Government*, The Cole Report (Aug. 6, 2026), https://matthewcole.substack.com/p/ive-been-subpoenaed-by-the-government.

## ARGUMENT

### I. Continued sealing of the Subpoena Materials is neither required nor warranted.

A case contesting a grand jury subpoena is "ancillary to the grand jury's work." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 140 (D.D.C. 2023) ("*In re Pence Grand Jury Records*"). Because such ancillary proceedings are "at arm's length" from the grand jury itself, they are not subject to the secrecy imposed on matters occurring "before" the grand jury. *Id.*; *cf.* Fed. R. Crim. P. 6(e)(2)(B). Rather, records in ancillary proceedings may only be sealed pursuant to Federal Rule of Criminal Procedure 6(e)(6), which provides that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings, must be kept under seal *to the extent and as long as necessary* to prevent the *unauthorized* disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6) (emphasis added).

If information relating to grand jury proceedings is disclosed or has become widely known, however, Rule 6(e)(6)'s sealing power is curtailed. As the D.C. Circuit has noted in this context, "grand jury secrecy is not unyielding when there is no secrecy left to protect." *In re Grand Jury Subpoena to Judith Miller*, 493 F.3d 152, 154–55 (D.C. Cir. 2007) (cleaned up); *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir 1998) ("when information is sufficiently widely known it has lost its character as Rule 6(e) material" (cleaned up)); *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) ("The purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret."); *accord In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (vacating injunction preventing reporters from revealing that attorney was target of grant jury investigation when that fact had been revealed in open court, because "[o]nce announced to the world, the information lost its secret characteristic").

Information about a grand jury proceeding sometimes makes its way into the public because the recipient of a subpoena discloses it to the press. The recipient is not bound by any of the secrecy provisions in Rule 6(e). *See* Fed. R. Crim. P. 6(e)(2)(A)–(B) (providing that "no obligation of secrecy may be imposed on any person" not specifically listed). To the contrary, subpoena recipients and their counsel can "proclaim[]" such facts "from the rooftops." *In re Motions of Dow Jones & Co.*, 142 F.3d at 505 (identifying print, radio, and television news where attorney discussed his client's grand jury subpoena). Such disclosures limit the scope of sealing authorized by Rule (6)(e)(6), which only protects against "unauthorized" disclosures. Records held by the judiciary corresponding to such lawfully disclosed information are, in turn, properly unsealed. *See, e.g.*, *In re Grand Jury Subpoena to Judith Miller*, 493 F.3d at 154–55 (granting, in part, motion to unseal affidavits and judicial opinion when grand jury witness and their counsel disclosed corresponding information to the news media and at trial).

A federal court in the District of Columbia, for example, recently unsealed records in a motion to quash proceeding filed by former Vice President Mike Pence because the Vice President had publicly disclosed "his constitutional challenge to the subpoena, [the court's] partial rejection of that challenge, and his intent to testify before the grand jury." *In re Pence Grand Jury Records*, 678 F. Supp. 3d at 141–42. And this Court last month ordered the disclosure of records filed in connection with a motion to quash a grand jury subpoena issued to Ellen Nakashima, a reporter for the Washington Post, where the information was "a matter of substantial public interest and otherwise publicly available." *See* Order, ECF No. 19, *In re Grand Jury Subpoena No. 25-3/2026R00115-0*, No. 1:26-dm-00001-WBP-1 (E.D. Va. Jul. 30, 2026).

This Court should do the same here. Mr. Cole has publicly acknowledged his receipt of the Subpoena. *See* Cole (@author_matthew_cole), *supra*; Cole, *I've Been Subpoenaed By The Government*, *supra*. The scope of the subpoena, and Mr. Cole's challenge to it, have become the subject of widespread press coverage. *See* Barrett, *supra*; Scheyder, *supra*; Dunbar, *supra.* Mr. Cole and his counsel were authorized to make such disclosures, and in the wake of their doing so there is no secrecy left for Rule 6(e)(6) to protect. The Subpoena Materials should, accordingly, be unsealed.

To the extent anything in the Subpoena Materials touches on still-secret matters occurring before a grand jury, targeted redactions are the appropriate measure to protect such information. *Cf. In re Pence Grand Jury Records*, 678 F. Supp. 3d at 147 (redacting text that "discloses a matter occurring before the grand jury while providing public access to the applicable law and legal analysis").

## II. There is an ongoing public interest in the Subpoena Materials.

Applicants and the public have a strong interest in understanding the government's and Mr. Cole's arguments for why the Subpoena should or should not be enforced, which come amid an alarming spike in grand jury subpoenas issued to reporters. Until recently, grand jury subpoenas seeking to compel journalists to reveal their confidential sources were exceedingly rare. From 2001 to the beginning of the second Trump administration, the federal government served grand jury subpoenas seeking to force reporters to appear in person and reveal their confidential sources in only three national security leak cases. *Reporters Committee Statement on Subpoena Issued to New York Times Freelancer*, Reps. Comm. For Freedom of the Press (Aug. 1, 2026), https://www.rcfp.org/reporters-committee-statement-on-subpoena-issued-to-new-york-times-freelancer/. But in recent months there have been at least four batches of grand jury subpoenas (including the one issued to Mr. Cole) actually or putatively attempting to force such disclosures. *Id.*; *see also* Michael M. Grynbaum, *Times Journalists Subpoenaed as Trump Escalates Pressure on Media*, N.Y. Times (Jul. 11, 2026), www.nytimes.com/2026/07/11/business/media/new-york-times-trump-subpoenas.html (describing subpoenas issued to three journalists at The Times); Sadie Gurman et al., *Trump's Complaints About Iran War Leaks Prompt Aggressive DOJ Investigations*, Wall Street J. (May 11, 2026), https://www.wsj.com/politics/national-security/trumps-complaints-about-iran-war-leaks-prompt-aggressive-doj-investigations-b5d31c13 (describing subpoenas issued to The Wall Street Journal); Perry Stein, *DOJ Issued Subpoenas to Force Post, WSJ Reporters to Testify Before Grand Jury*, Wash. Post (June 23, 2026), https://www.washingtonpost.com/national-security/2026/06/23/doj-issued-then-withdrew-

subpoenas-force-post-wsj-reporters-testify/ (describing subpoenas issued to reporter for the Washington Post and three reporters for the Wall Street Journal).

Against that backdrop, Applicants and the public have a profound interest in understanding the arguments from Mr. Cole and the government in this proceeding, including any arguments regarding the circumstances under which the subpoenas were issued, the government's justifications for seeking source information from a journalist, the nature and scope of the information sought, and whether the proper procedures were followed. In particular, because the law has traditionally required journalistic subpoenas to be narrowly targeted, it is important to know whether this subpoena involves an expansive time frame, sweeps so broadly that other sources for other stories may fall within its scope, and the kinds of disclosures sought about sources.

The instant proceedings are of particular interest to Applicant The Times, as this is the second time this year the government has served grand jury subpoenas ostensibly seeking to compel the sources of information for stories that it has published. In July, three reporters for The Times received subpoenas summoning them to testify before a federal grand jury in New York after it reported on security concerns involving President Trump's Qatar-donated Air Force One. *See* Grynbaum, *supra.* In addition, the government also served subpoenas on the reporters' phone carriers for their call logs, with some requesting data from months before the relevant reporting began. In one case, the subpoenas were served with a nondisclosure order to the provider. Michael M. Grynbaum, *U.S. Sought Phone Records of Times Journalists and Their Relatives*, N.Y. Times (Jul. 20, 2026), https://www.nytimes.com/2026/07/20/business/media/new-york-times-subpoenas-phone-records.html.

The Times moved to quash the subpoenas to the reporters and the phone companies in the Southern District of New York, arguing, *inter alia*, that they were issued in bad faith to harass, intimidate, and retaliate, and also that the government failed to satisfy Second Circuit law regarding reporters' privilege for confidential sources as well as its own procedures for subpoenas to journalists. *See* Mot. to Quash, ECF Nos. 22–23, *In re: Grand Jury Subpoenas Dated Jul. 10, 2026*, No. 1:26-mc-00352-AS (S.D.N.Y. Jul. 15, 2026). Notably, the court in the motion to quash proceedings unsealed the docket and almost all of the filings therein. *See generally In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y., filed Jul. 16, 2026). At a hearing on The Times' motion, Judge Arun Subramanian sharply questioned the government's conduct and gave it the option to withdraw the subpoenas or have them quashed. *See* Hearing Tr. 8:3–5, ECF No. 50, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y. Jul. 23, 2026); Michael M. Grynbaum & Jonah E. Bromwich, *U.S. Withdraws Subpoenas Issued to New York Times Journalists*, N.Y. Times (Jul. 23, 2026), www.nytimes.com/2026/07/23/business/media/new-york-times-subpoenas-withdraw.html. The government chose the latter. Hearing Tr. 32:23–25, ECF No. 50, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y. Jul. 23, 2026); *see also* Order, ECF No. 38, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y. Jul. 23, 2026). The Times has an obvious interest in whether the government may have engaged in similarly questionable conduct here.

The instant proceedings are also of considerable importance to the Reporters Committee, which was founded to help protect journalists' source relationships and wishes to evaluate whether to seek leave to participate as amicus curiae on the merits of Cole's ancillary proceeding. *Our History*, Reps. Comm. for Freedom of the Press, www.rcfp.org/our-history (noting RCFP was

founded in order to defend against government subpoenas seeking reporters' confidential sources). Without access to the Subpoena Materials, however, it is impossible for the Reporters Committee or other interested members of the public to understand what arguments are being presented for judicial resolution. But they may be consequential to the news media—the government has indicated it is looking to bring a new reporter's privilege case to the Supreme Court. *See* Hearing Tr. 6:1–7:9, ECF No. 50, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y. Jul. 23, 2026) (acknowledging it is "possible" the government wants to bring a reporters privilege case to the Supreme Court to resolve the "split" between the Second and Fourth Circuits).

Applicants and the public also have a pronounced interest in understanding the application of the government's own safeguards for members of the press in criminal investigations. For decades, the Department of Justice has maintained regulations at 28 C.F.R. § 50.10—referred to as the 'news media guidelines'—that "provide protection to members of the news media from certain law enforcement tools," including by restricting the use of grand jury process. 28 C.F.R. § 50.10(a)(4). How and whether the government interprets and implements those regulations is of significant interest to the public, particularly in so far as it informs judicial decision making, *cf.* Hearing Tr. 11:3–15:3, ECF No. 50, *In re Grand Jury Subpoenas Dated July 10, 2026*, No. 26-mc-00352 (S.D.N.Y. Jul. 23, 2026) (colloquy between Judge Subramanian and counsel for the government regarding application of the guidelines to grand jury subpoenas); Hearing Tr. 11:4–19:23, ECF No. 18-10, *In re Grand Jury Subpoena No. 25-3/2026R00115-0*, No. 1:26-dm-00001-WBP-1 (E.D. Va. Jul. 21, 2026) (colloquy between Judge Porter and counsel for the government discussing the pertinence of the guidelines to the court's assessment of whether presumption of regularity still applies to the issuance of a grand jury subpoena to Ellen Nakashima), and the ongoing debate over a federal shield law. *See, e.g.*, *Reporters Committee Urges Congress to Pass*

*PRESS Act*, Reps. Comm. for Freedom of the Press (Oct. 8, 2024), https://www.rcfp.org/press-act-letters-house-senate/.

## CONCLUSION

In light of the public disclosure that has already taken place in this matter, as well as the substantial public interest in the Subpoena Materials, The Times and Reporters Committee respectfully request that the Court grant their Application and unseal the Subpoena Materials.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Lin Weeks*
Lin Weeks
Va. Bar No. 97351
lweeks@rcfp.org
Allyson Veile*
aveile@rcfp.org
Adam A. Marshall*
amarshall@rcfp.org
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9300
Facsimile: 202.795.9310

**Pro Hac Vice Application Forthcoming*

*Counsel for Applicant Reporters Committee for Freedom of the Press*

*/s/ Alia Smith*
Alia Smith
Va. Bar No. 97465
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: 212.556.7888
alia.smith@nytimes.com

*Counsel for Applicant The New York Times Company*

**CERTIFICATE OF SERVICE**

I, Lin Weeks, hereby certify that on August 14, 2026, a copy of the foregoing was filed electronically using this Court's CM/ECF system, and sent via email to:

Brian Samuels
United States Attorney's Office for the Eastern District of Virginia
Newport News Division
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Brian.Samuels@usdoj.gov

David A. O'Neil
Carter Burwell
Leah W. Rosenberg
Debevoise & Plimpton LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
daoneil@debevoise.com
cburwell@debevoise.com
lwrosenberg@debevoise.com

Lynn Oberlander
Ballard Spahr LLP
1675 Broadway, 19th Floor
New York, N.Y. 10019
oberlanderl@ballardspahr.com

Dated: August 14, 2026

Respectfully submitted,

*/s/ Lin Weeks*
Lin Weeks
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Applicant the Reporters Committee for Freedom of the Press*